1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10
11
12
13
14
15

| | |
|---|---|
| JACKIE GREENE,                                                    ) | Case No. 2:15-cv-00677-JAD-NJK |
|        Plaintiff(s),                          ) | |
|                            ) | REPORT AND RECOMMENDATION |
| vs.                                                                     ) | |
| WAL-MART STORES, INC.,                           ) | |
|        Defendant(s).                        ) | |

16    Pending before the Court is Defendant's renewed motion for dismissal sanctions.  Docket No.

17  15.  Plaintiff filed a response in opposition, and Defendant filed a reply.  *See* Docket Nos. 17, 18, 25.[1]

18  The motion came on for hearing on December 9, 2015.  Docket No. 27.[2]  For the reasons discussed more

19  fully below, the undersigned recommends that the motion be granted and that this case be dismissed.

20  **I.    FACTUAL BACKGROUND**

21    This case arises out of Plaintiff's allegations that she was injured when she slipped and fell in

22  a Wal-Mart store on October 29, 2012.  *See* Docket No. 1-2 at ¶ 7.  The case was filed initially in state

23  _____

24  [1] Plaintiff failed to file a timely response to the motion, prompting the Court to issue an order for
Plaintiff to show cause why the motion should not be granted as unopposed.  Docket No. 16.  Plaintiff's

25  response to that order to show cause itself was untimely.  *Compare id.* (requiring response by November 12,
2015) *with* Docket No. 17 (response filed on November 13, 2015).  Despite this repeated failure to comply

26  with deadlines, the Court will consider the untimely response in the interest of justice.

27    [2] A transcript of that hearing is not currently available.  Citations herein to that hearing will refer to

28  the audio recording.

1    court, but was removed to this Court on April 14, 2015.  *See* Docket No. 1.  On May 18, 2015, the

2    parties held the discovery conference required by Rule 26(f) of the Federal Rules of Civil Procedure.

3    Docket No. 7 at 1.[3]  On July 14, 2015, the parties filed a proposed discovery plan, Docket No. 7, and the

4    Court entered a corresponding scheduling order, Docket No. 8.

5           On August 4, 2015, the parties stipulated to extend the deadlines in the scheduling order based

6    on the unavailability of Plaintiff's expert to prepare a report in accordance with the previously-ordered

7    schedule, as well as delays in Defendant's ability to obtain Plaintiff's pre-incident medical records.  *See*

8    Docket No. 9 at 2.  The Court granted that stipulation and the resulting order is the operative scheduling

9    order.  Docket No. 10.  Most pertinent to the pending motion, the scheduling order established the

10   following deadlines: (a) initial expert disclosures were due on September 28, 2015; (b) rebuttal expert

11   disclosures were due on October 26, 2015; and (c) the discovery cutoff expired on November 23, 2015.

12   *See id.* at 2.

13          Defendant's motion is predicated on a smorgasbord of discovery violations committed by

14   Plaintiff through her counsel in this case.[4]  Plaintiff's discovery violations began at the inception of the

15   case.  Her initial disclosures were due on June 1, 2015, *see* Docket No. 8 at 1, but she did not provide

16   them until July 2, 2015, *see* Docket No. 18-3.  Even more significantly, the initial disclosures claimed

17   only $22,653.68 in past medical damages and attached only 20 pages in medical bills.  *See id.*  The

18   medical records upon which Plaintiff would rely to support her claim should have also been disclosed

19   with her initial disclosures.  *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring disclosure of all documents

20   that the disclosing party "may use to support [her] claims"); Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring

21   disclosure of all documents "on which each computation [of damages] is based, including materials

22   bearing on the nature and extent of injuries suffered").  Plaintiff's counsel implicitly concedes that such

23   medical records were available for disclosure as of the date of Plaintiff's initial disclosures.  *See* Hearing

24   —————————————

25          [3] References hereafter to "Rules" refer to the Federal Rules of Civil Procedure

26          [4] In addition to the discovery violations discussed within this section, Plaintiff also failed to timely
27   provide her expert reports, and provided expert reports that failed to comply with several requirements of
     Rule 26(a)(2)(B).  These additional violations will be addressed more fully below in analyzing an
28   appropriate sanction.

Rec. (12/9/2015) at 3:23 p.m. (Plaintiff's counsel acknowledged having the medical records in July 2015).  Nonetheless, these medical records were not disclosed until Plaintiff provided a supplemental disclosure on October 23, 2015, Docket No. 18-5, nearly five months after the deadline for initial disclosures had passed and once the case entered the waning hours of the discovery period.  Moreover, Plaintiff's initial disclosures failed to provide any computation for future medical damages or even a place-holder for that category of damages.  *See* Docket No. 18-3.  Such a computation was required with the initial disclosures, *see, e.g.*, *Olaya v. Wal-Mart Stores, Inc.*, 2012 WL 3262875, *2 (D. Nev. Aug. 7, 2012),[5] but Plaintiff did not reveal that she was seeking exponentially higher damages for future medical expenses until roughly four months after the deadline for initial disclosures had passed, *see* Docket No. 15-8.

Plaintiff also failed to comply with her obligations to respond to interrogatories and requests for production that had been served on August 12, 2015.  *See* Docket No. 15-2.  These interrogatories and requests for production sought information and documentation central to evaluating Plaintiff's claim, such as "each and every medical record, report, bill, statement, invoice, and/or written document relating to your injury(s) suffered, if any, and/or medical expense(s) incurred, if any, as a result of your incident at Wal-Mart Store Number 3350 on October 29, 2012."  Docket No. 15-2 at 5.  Plaintiff did not serve responses during the period prescribed by Rule 33(b)(2) or Rule 34(b)(2)(A), which expired on September 14, 2015.

Once that response deadline had lapsed, Defendant's counsel sent numerous letters and made several telephone calls to Plaintiff's counsel seeking Plaintiff's responses:

- On September 29, 2015, Defendant's counsel sent a letter to Plaintiff's counsel noting that the deadline to respond to the discovery had passed on September 14, 2015, and that no responses had been provided.  *See* Docket No. 15-3.  Defendant's counsel requested

---

[5] While Plaintiff argues that an initial disclosure damages calculation was not required with respect to future medical damages until after an expert had been retained to make that determination, *see, e.g.*, Docket No. 17 at 6, the case law in this District is overwhelmingly to the contrary, *see, e.g.*, *Olaya*, 2012 WL 3262875, at *2.

3

responses no later than October 1, 2015, to ensure she was able to prepare for Plaintiff's deposition scheduled to take place on October 7, 2015.  *See id.*

- •   On October 2, 2015, Defendant's counsel sent another letter to Plaintiff's counsel referring to her telephone call earlier in the day to Plaintiff's counsel's cell phone and subsequent voicemail.  *See* Docket No. 15-4.  Defendant's counsel reiterated that responses to Defendant's discovery still had not been provided, which prejudiced her ability to prepare for Plaintiff's deposition, conduct other depositions, and obtain other discovery through subpoenas to third parties.  *See id.*  Defendant's counsel also warned that the uncured discovery violations could result in Defendant seeking sanctions under Rule 37.  *See id.*

- •   On October 6, 2015, Defendant's counsel served a notice vacating the deposition of Plaintiff based on her continued failure to comply with her obligations under Rules 33 and 34, or to respond to Defendant's counsel's numerous meet-and-confer requests.  *See* Docket No. 15-5.

- •   On October 14, 2015, Defendant's counsel sent Plaintiff's counsel a letter referencing another voicemail message she had left earlier that day seeking a response to her numerous inquiries regarding the absent discovery responses.  Docket No. 15-6.  Defendant's counsel also made clear that the failure to respond to her inquiries and the failure to provide the discovery responses required her to seek recourse with the Court.  *See id.*

In short, Defendant's counsel contacted counsel at least four times in writing and two times by telephone seeking responses to Defendant's discovery, none of which communications bore any fruit.

In light of the above, Defendant filed the pending motion for dismissal sanctions on October 14, 2015.  Docket No. 13, 15.[6]  Notwithstanding the filing of that motion, Plaintiff still did not provide the required discovery responses in a prompt fashion.  Instead, Plaintiff provided her responses to the

_____

[6] The Court denied the initial motion without prejudice so that Defendant could address whether a finding of willfulness, fault or bad faith is required for the relief sought.  Docket No. 14.  On October 15, 2015, Defendant refiled its motion addressing that issue.  Docket No. 15.

4

interrogatories and requests for production on October 26, 2015, *see* Docket No. 17-3, roughly a month and a half after they were due and nearly two weeks after Defendant filed the pending motion. Significantly, in waiting to provide the responses until that time, Plaintiff prevented Defendant from conducting follow-up discovery within the time left in the discovery period. *See* Docket No. 10 at 3 (discovery cutoff of November 23, 2015). Moreover, by this time, the initial expert deadline had long passed and the rebuttal expert deadline expired the same day the untimely discovery responses were served. *See id.* The timing of the service of the discovery responses is particularly troubling because it is clear that throughout this time period significant, highly relevant information was readily available to Plaintiff and her counsel. Not only is it clear that Plaintiff's counsel possessed the pertinent medical records in July 2015, *see* Hearing Rec. (12/9/2015) at 3:23 p.m., but these documents were actually provided to Plaintiff's experts by September 2015, at the latest, *see* Docket No. 15-8 ("Comprehensive Record Review," dated September 28, 2015, including analysis based on medical records that had not been provided to Defendant).

In response to these obvious discovery violations, Plaintiff's counsel has offered a kitchen sink filled with convolution and nonsense. For example, Plaintiff's counsel attacks Defendant's counsel, complaining that Defendant has had numerous attorneys working on this matter, that Defendant's counsel represents Defendant in many lawsuits in Nevada, that Defendant's counsel called him from a telephone number with a California area code, and that Defendant's counsel "works very hard to get cases dismissed on technicalities rather than the merits of the case like trial lawyers." *See, e.g.*, Docket No. 17 at 2-3. The Court fails to discern how any of these irrelevant attacks on Defendant's counsel excuse in any way Plaintiff's admittedly untimely discovery responses.[7]

Plaintiff's counsel also asserts that at some unspecified time he had spoken with an associate working as Defendant's counsel about the untimely discovery. *See* Docket No. 17 at 2. The record does

---

[7] Plaintiff's counsel has served up a full assortment of irrelevant excuses in responding to Defendant's motion, including the fact that (1) Plaintiff's counsel moved offices in June 2015; (2) Plaintiff's counsel had his laptop stolen; and (3) Plaintiff's counsel has high blood pressure, which has resulted in medical treatment and monthly checkups. *See* Docket No. 17-6; Docket No. 17 at 2; *see also* Hearing Rec. (12/9/2015) at 3:26 p.m. Plaintiff's counsel has failed to connect these issues to the instant discovery violations in any meaningful way and they appear tangentially related, at best.

not support that contention.  *See* Docket No. 18-2 (declaration of associate working for Defendant, denying that conversation identified by Plaintiff's counsel ever occurred).  More importantly, the significance of any such conversation "about any documents [Defendant's counsel] did or did not have" was undeveloped by Plaintiff.  The mere fact that some conversation may have taken place about documents does not excuse Plaintiff's failure to comply with her discovery obligations.  At the hearing, Plaintiff's counsel implied that associates working for Defendant acquiesced in the untimeliness of Plaintiff's discovery.  *See* Hearing Rec. (12/9/2015) at 3:26 p.m.  Defendant disagreed that such acquiescence ever occurred, and further argued that this issue was waived because it was not included in Plaintiff's briefing, which prevented Defendant from providing a declaration refuting it directly.  Hearing Rec. (12/9/2015) at 3:29 - 3:30 p.m.  To the extent Plaintiff's counsel is attempting to argue that there was some sort of agreement to provide Plaintiff's discovery responses in such an untimely fashion, that argument has been waived because it was raised for the first time at the hearing.  *See, e.g.*, *Harger v. Dept. of Labor*, 569 F.3d 898, 904 n.9 (9th Cir. 2009).  Even were the Court to consider the contention, however, it is meritless.  Plaintiff's counsel's contention is belied by the fact that Defendant's counsel contacted him telephonically and in writing at least <u>six times</u> seeking prompt service of the overdue discovery responses.  There was obviously no agreement and no acquiescence.

Plaintiff's counsel next argues that he had actually "copied everything [he] had to make sure [Defendant's counsel] had all documents in the case."  *See* Docket No. 17 at 2; *see also* Docket No. 17-6 at ¶ 2 ("I have provided discovery to defendant").  Such representations are short on detail, including most notably the date on which any such discovery was provided.  Defendant challenges these statements as egregious misrepresentations.  *See, e.g.*, Docket No. 18 at 5-6.  When pressed at the hearing for details on the alleged production, Plaintiff's counsel was unable to provide basic details or even state whether the documents identified were served prior to the filing of the pending motion for dismissal sanctions.  *See, e.g.*, Hearing Rec. (12/09/2015) at 3:24 - 3:25 p.m.  Nonetheless, the record is clear that Plaintiff did not respond to the interrogatories or requests for production until October 26, 2015, nearly two weeks after the pending motion was filed and more than a month after the responses were due.  *See* Docket No. 17-3 at 10, 11, 16, 17 (discovery responses provided by Plaintiff dated October 26, 2015, and attaching proofs of service dated October 26, 2015); *see also* Docket No. 18-2

1    at ¶ 5 (declaration of associate working for Defendant, denying that any documents were ever received

2    prior to the filing of the pending motion other than Plaintiff's untimely initial disclosures and untimely

3    expert reports).

4       Plaintiff's counsel speculated at the hearing that his paralegal was tasked with providing medical

5    records to Defendant's counsel with the initial disclosures and that he believed she had done so.  *See*

6    Hearing Rec. (12/9/2015) at 3:22 - 3:24 p.m.; *see also* Docket No. 17 at 4 ("Plaintiff also contends that

7    the records were sent along with the bills in the initial disclosure").  Such speculation is not compelling.

8    The evidence presented refutes the contention that anything other than the 20 pages of billing documents

9    were provided with the initial disclosures.  *See* Docket No. 18-3 (initial disclosures faxed on July 2,

10    2015); *see also* Docket No. 18-1 at ¶ 3.  Moreover, as of at least October 2, 2015, Plaintiff's counsel was

11    put on notice that the medical records had not been received by Defendant.  *See* Docket No. 15-4 (letter

12    from Defendant's counsel explaining that Plaintiff's counsel has "further compounded the prejudice to

13    my client by serving a tardy expert disclosure <u>based on information improperly withheld from</u>

14    <u>Defendant, but freely given to Plaintiff's expert</u>" (emphasis added)).  Had Plaintiff's counsel sincerely

15    believed such documents were provided months earlier with initial disclosures, he provides no

16    explanation why he did not so state in response to Defendant's counsel's letter.  Instead, on October 23,

17    2015, more than a week after the pending motion was filed, Plaintiff's counsel served Defendant's

18    counsel with a supplemental disclosure attaching the medical records.  *See* Docket No. 18-5; *see also*

19    Docket No. 18-1 at ¶ 5.

20       Plaintiff's counsel further blames staffing issues for the fact that he "got behind on a few things,"

21    including the discovery in this case.  *See* Docket No. 17 at 3.  Once again, this excuse fails to justify the

22    discovery violations.  If an attorney realizes that staffing difficulties render it impossible to comply with

23    deadlines set by the Court, the remedy is to confer with opposing counsel and seek a continuance of

24    deadlines through filing either a stipulation or motion.  The remedy is most assuredly not stonewalling

25    opposing counsel, ignoring her pleas to provide already untimely discovery responses, and then waiting

26    to comply with basic discovery obligations until after a motion is brought seeking dismissal sanctions.

27       In short, the record is clear that Plaintiff failed to serve responses to Defendant's interrogatories

28    and requests for production despite the ready availability of highly probative information and documents.

Plaintiff chose to wait to do so until after the pending motion was filed and the discovery period was coming to a close, which precluded Defendant from propounding follow-up discovery, retaining an expert based on the information provided, or obtaining third-party discovery. Plaintiff offers no coherent reason, let alone any substantial justification, for this shortcoming. As discussed more fully below, these discovery violations were compounded by the other discovery violations, including Plaintiff's failure to comply with her initial disclosure obligations.

## II.     ANALYSIS

Defendant brings the pending motion pursuant to Rule 37(d)(1)(A) of the Federal Rules of Civil Procedure, which authorizes the imposition of sanctions when a party fails to serve responses to interrogatories and requests for production. Hence, the Court's inquiry is, first, whether such a discovery violation occurred and, second, if so, the appropriate sanction that should be imposed, if any.

### A.     FAILURE TO RESPOND TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

As a threshold matter, the Court finds that Plaintiff failed to comply with her obligations to provide responses to Defendant's interrogatories and requests for production as discussed in more detail above. Those responses were due by September 14, 2015, but were not provided by that date. Despite at least two telephone calls and four written correspondences thereafter, Plaintiff's counsel still did not provide Plaintiff's responses. Even once the pending motion was filed, the responses were not provided in a prompt manner. Instead, Plaintiff waited roughly two additional weeks to provide responses. All the while, Plaintiff's counsel provided responsive documents to her own experts for their review and analysis. Hence, as a threshold matter, Plaintiff failed to serve responses to Defendant's interrogatories and requests for production.[8]

---

[8] Plaintiff argues that the imposition of Rule 37(d) sanctions would be improper because Plaintiff eventually provided discovery responses. *See* Docket No. 17 at 4. The Court disagrees. "[O]nce a motion for sanctions under Rule 37(d) has been made, the delinquent party cannot deprive the court of the authority to impose sanctions by then making the response to discovery requests that should have been made earlier. . . . [Rule 37(d)] does not become inapplicable because a response is made in the interim between the filing of the motion for sanctions and the hearing on the motion." 8B Wright, Miller, & Marcus, FEDERAL PRACTICE AND PROCEDURE, § 2291, at 638 (2010); *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947

**B.    APPROPRIATE SANCTION**

The broad, underlying purpose of the Federal Rules of Civil Procedure is to "secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.  As the text of Rule 1 now makes explicit, the duty to strive toward that goal is shared by the Court and the parties. *See id.*  It is with that charge as a guide that courts construe and administer the Rules. There are several mechanisms by which this goal can be accomplished, including entering case-dispositive sanctions against a party who fails to comply with the Rules or unnecessarily multiplies the proceedings.

Rule 16 is a central pretrial rule that authorizes the Court to manage cases "so that disposition is expedited, wasteful pretrial activities are discouraged, the quality of the trial is improved, and settlement is facilitated." *In re Phenylpropanolamine Prods. Liability Litig.,* 460 F.3d 1217, 1227 (9th Cir. 2006). "Subsection (f) puts teeth into these objectives by permitting the judge to make such orders as are just for a party's failure to obey a scheduling or pretrial order, including dismissal." *Id.*  Rule 16(f) specifically provides that "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling order or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C).[9]

Rule 37 governs discovery disputes more specifically, as well as sanctions stemming therefrom. Similar to Rule 16, Rule 37 provides for sanctions against a party who fails to comply with discovery orders:  "[i]f a party ... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A).  Issuance and violation of a discovery order is not a prerequisite to the imposition of sanctions, however. *See Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) ("[The] argument that an order to compel discovery is a prerequisite to dismissal is without merit"); *see also* 8B Wright,

---

(9th Cir. 1993).  Nonetheless, the Court may consider that fact in assessing the appropriate sanction. *See, e.g.*, *Antico v. Honda of Camden*, 85 F.R.D. 34, 36 (E.D. Penn. 1979).  In this instance, and as discussed more fully below, the undersigned finds dismissal sanctions appropriate notwithstanding Plaintiff's eventual service of discovery responses.

[9] Rule 37(b)(2)(A) in turn enumerates several potential sanctions, up to and including case-dispositive sanctions.

9

Miller, & Marcus, FEDERAL PRACTICE AND PROCEDURE, § 2291, at 630 (2010) ("No court order is required to bring Rule 37(d) into play"). Instead, the Court may impose sanctions on a party who, *inter alia*, fails to respond to properly served interrogatories or requests for production. *See* Fed. R. Civ. P. 37(d)(1)(A)(ii). Once again, a panoply of potential sanctions are envisioned, including those enumerated in Rule 37(b)(2)(A). *See* Fed. R. Civ. P. 37(d)(3)*.

The Court has "great latitude" in fashioning sanctions pursuant to Rule 37. *See Lew v. Kona Hosp.,* 754 F.2d 1420, 1425 (9th Cir .1985). In appropriate situations, the Court may find that a severe sanction is necessary to prevent some benefit to the sanctioned party. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642 (1976) (finding that extreme sanction of dismissal was appropriate due to respondents' flagrant bad faith and their counsel's callous disregard of responsibilities). At the same time, a case-dispositive sanction is a harsh penalty reserved for extreme circumstances. *See, e.g.*, *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011). In the context of a motion brought under Rule 37(d) specifically, the Ninth Circuit has indicated that dismissal may be appropriate for "a serious or total failure to respond to discovery." *Sigliano*, 642 F.2d at 310. Moreover, the disobedient party's conduct must be due to willfulness, fault, or bad faith for dismissal to be appropriate. *Id*.

The Ninth Circuit has constructed a five-factor analysis to determine whether a case-dispositive sanction under Rule 37 is just: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Hester v. Vision Airlines, Inc.,* 687 F.3d 1162, 1169 (9th Cir. 2012).[10]  With respect to this final consideration, the Ninth Circuit looks to (1) whether the Court considered lesser sanctions; (2) whether it tried lesser sanctions; and (3) whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. *See, e.g., id.* at 1170. It is not always necessary to impose less severe sanctions first, or to give any explicit warning that a case-dispositive sanction may be imposed. *Valley Eng'rs Inc. v. Electric*

---

[10] "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a . . . dismissal sanction. Thus the key factors are prejudice and the availability of lesser sanctions." *Henry*, 983 F.2d at 948 (quoting *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)).

1    *Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir.1998).  The test provides courts with a way to think about what

2    to do rather than a set of conditions precedent for imposing sanctions.  *Valley Engineers*, 158 F.3d at

3    1057.   A court may consider all of the offending party's discovery conduct when making its

4    determination of the appropriate sanction.  *Henry,* 983 F.2d at 947.

5                    **1.      Expeditious Resolution of Litigation**

6            "Orderly and expeditious resolution of disputes is of great importance to the rule of law.  By the

7    same token, delay in reaching the merits, whether by way of settlement or adjudication, is costly in

8    money, memory, manageability, and confidence in the process."  *Phenylpropanolamine Products*, 460

9    F.3d at 1227.  Here, Plaintiff habitually failed to comply with her discovery obligations.  This behavior

10   is inconsistent with Rule 1's directive to "secure a just, speedy, and inexpensive" determination of this

11   action.

12           This factor militates in favor of dismissal.

13                   **2.      Court's Need to Manage Its Docket**

14           It has long been recognized that the Court's inherent power to control its docket includes the

15   ability to issue severe case-dispositive sanctions when appropriate.  *E.g., Thompson v. Housing

16   Authority of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).  Indeed, the Supreme Court has noted that

17   case-dispositive sanctions "must be available to the district court in appropriate cases, not merely to

18   penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might

19   be tempted to such conduct in the absence of such a deterrent."  *National Hockey League*, 427 U.S. at

20   643.  Plaintiff's refusal to comply with her discovery obligations has thwarted the advancement of the

21   case by making it difficult for the Court to effectively manage its docket.  By Plaintiff's own admission,

22   allowing the case to proceed at this point would require reopening discovery and delaying trial.  *See*

23   Hearing Rec. (12/9/2015) at 3:28 - 3:29 p.m.

24           This factor militates in favor of dismissal.

25                   **3.      Risk of Prejudice**

26           Actions that impair an opposing party's ability to go to trial or interfere with the rightful decision

27   of the case are prejudicial.  *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).  The fact that a

28   party was eventually able to obtain the discovery sought or that the opposing party is now willing to

11

1    participate in discovery does not foreclose a finding of prejudice.  *See id.*  That is especially true when

2    the failure to comply with discovery obligations foreclosed the ability of the movant to obtain follow-up

3    discovery during the discovery period or otherwise hindered its ability to prepare for trial.  *See id.*

4    Especially given the unique circumstances of this case, the risk of prejudice to Defendant here is

5    significant.

6        At the hearing on the pending motion, Plaintiff argued that there is no prejudice to Defendant

7    because the Court should simply re-set the discovery clock and allow discovery to resume with any

8    necessary extensions.  Hearing Rec. (12/9/2015) at 3:28 - 3:29 p.m.  The Court disagrees.  As an initial

9    matter, Defendant was unable to propound follow-up discovery, retain an expert based on the

10   information provided, or obtain third-party discovery during the agreed-upon and court-ordered

11   discovery period.  *See, e.g.*, Hearing Rec. (12/9/2015) at 3:03 - 3:04 p.m.  This alone is sufficient to

12   establish a risk of prejudice.  *See, e.g., Payne*, 121 F.3d at 508.

13       Even more significantly, however, the store manager at the Wal-Mart location where the incident

14   allegedly occurred died unexpectedly in late October or early November 2015.  Hearing Rec.

15   (12/9/2015) at 3:13 - 3:14 p.m., 3:34 - 3:35 p.m.  Hence, at this point, Defendant is unable to test the

16   facts Plaintiff provides through discovery with one of its primary sources of information, Hearing Rec.

17   (12/9/2015) at 3:14 - 3:15 p.m., 3:33 - 3:34 p.m., which in turn impedes Defendant's ability to conduct

18   follow-up discovery and prepare for trial.  Had Plaintiff promptly complied with her discovery

19   obligations, the store manager could have reviewed the discovery and provided key insight to Wal-Mart

20   on Plaintiff's claim.  Restarting the discovery clock is simply not a option at this point without a

21   significant risk of prejudice to Defendant.  *Cf. Henry*, 983 F.2d at 948 (finding prejudice when discovery

22   delays caused by the opposing party made it impossible for a key witness to participate in discovery in

23   light of his sickness and resulting death).

24       Moreover, Plaintiff's attempt to blame Defendant for not conducting more discovery earlier is

25   untenable.  Defendant developed a litigation strategy in this case based on the scant evidence provided.

26   In particular, while Plaintiff alleges that she was injured on October 29, 2012, she did not report the

27   incident to Wal-Mart for several months.  *See* Docket No. 18-1 at ¶ 7.  Hence, the Wal-Mart store at

28   issue has no contemporaneous records of any incident.  Hearing Rec. (12/9/2015) at 3:06 - 3:07 p.m.

1    Plaintiff's initial disclosures did not provide any corroborating evidence supporting her allegation and

2    asserted a $22,653.68 medical damages claim based on 20 pages of attached billing records. *See* Docket

3    No. 18-3.[11]  All the while, Plaintiff conducted no discovery herself and provided no evidence of any kind

4    that the alleged incident actually occurred. *See* Docket No. 18-1 at ¶¶ 6-7.  Based on that state of affairs,

5    Defendant developed a litigation strategy that Plaintiff was bringing a fraudulent claim alleging a slip-

6    and-fall that never happened and, further, that the investment of significant resources into the discovery

7    process was not advisable in light of the low liability exposure evidenced by the computation of

8    damages.  Hearing Rec. (12/9/2015) at 3:06 - 3:08 p.m.; *see also* Docket No. 18 at 10-11.  No evidence

9    of any kind corroborating that Plaintiff may have been actually injured inside a Wal-Mart store was

10   provided until service of the untimely discovery responses in the twilight hours of the discovery period.

11   Such evidence included contemporaneous medical records evidencing that Plaintiff told her doctors that

12   she had slipped on dog food in a Wal-Mart store. *See* Docket No. 18-5 at 6.  Had such information been

13   timely provided by Plaintiff, Defendant could have taken it into account in determining an appropriate

14   strategy for obtaining further discovery and preparing for trial. *See* Hearing Rec. (12/9/2015) at 3:10 -

15   3:12 p.m.  Plaintiff's failure to comply with her discovery obligations deprived Defendant of that

16   opportunity.

17        This factor militates in favor of dismissal.

18        **4.    Public Policy**

19        "[T]he public policy favoring disposition of cases on their merits strongly counsels against" case-

20   dispositive sanctions. *Phenylpropanolamine Products*, 460 F.3d at 1228 (citation omitted).  Although

21   this factor may cut against recommending case-dispositive sanctions, it is not enough to prevent such

22   a recommendation. *See Henry*, 983 F.2d at 948; *see also Phenylpropanolamine Products*, 460 F.3d at

23   1228.  Indeed, Plaintiff's lack of participation in the discovery process has made it impossible for the

24   Court to continue the case with reasonable assurance that Defendant would have sufficient access to

25   facts needed to defend in this case.

26   ————————————

27        [11] It was not until months later when Plaintiff provided her untimely expert reports that she included
     any indication that she would be seeking an exponentially higher amount of damages at trial based on
28   previously undisclosed future medical expenses. *See* Section I, *supra*.

### 5.   Less Drastic Sanctions

The Court must consider the adequacy of less drastic sanctions before imposing a case-dispositive sanction.  As noted above, the Ninth Circuit looks to (1) whether this Court considered lesser sanctions; (2) whether it tried lesser sanctions; and (3) whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. *See, e.g.*, *Hester*, 687 F.3d at 1170.  The Ninth Circuit has indicated that it is not always necessary to impose less severe sanctions first, or to give any explicit warning that a case-dispositive sanction may be imposed. *Valley Engineers*, 158 F.3d at 1057.  However, the disobedient party's conduct must be due to willfulness, fault, or bad faith for a case-dispositive sanction to be appropriate. *Sigliano*, 642 F.2d at 310.  A court may consider all of the offending party's discovery conduct when making its determination of the appropriate sanction. *Henry*, 983 F.2d at 947.  A party's repeated failure to comply with discovery requests and the Court's discovery orders manifests the requisite fault and justifies case-dispositive sanctions. *Sigliano*, 642 F.2d at 310.

In this instance, sanctions less drastic than dismissal are not available.  As noted above, the risk of prejudice to Defendant resulting from Plaintiff's discovery violations is significant, especially given the death of the store manager.  Moreover, the possibility of case-terminating sanctions cannot come as a surprise to Plaintiff.  Even where no explicit warning has been given, the text of Rule 37 gives parties notice of the possibility of case-terminating sanctions for failing to comply with their discovery obligations. *See Valley Engineers*, 158 F.3d at 1057; *see also Malone v. United States Postal Serv.*, 833 F.2d 128, 133 (9th Cir. 1987).  What is most critical for case-dispositive sanctions is whether the party has a pattern of discovery abuses that make it impossible for the Court to conduct the trial with any reasonable assurance that the truth would be available. *Valley Engineers*, 158 F.3d at 1057-58.  Those are precisely the circumstances the Court faces in this case.

Moreover, Plaintiff's repeated failure to comply with her discovery obligations and the Court's scheduling order manifests sufficient fault to justify dismissal here.  At every juncture of this case, Plaintiff has flouted her discovery obligations.  Initial disclosures were due by June 1, 2015, *see* Docket No. 8 at 1, but Plaintiff provided untimely initial disclosures on July 2, 2015, *see* Docket No. 18-3.  Those untimely initial disclosures failed to provide a proper damages calculation or supporting documentation. *See* Docket No. 18-3; *see also* Section I, *supra*.  Plaintiff waited until after the expert

disclosure deadline to reveal additional damages, and waited another three weeks to produce the supporting documentation. *See* Docket Nos. 15-8, 18-5.[12]  Initial expert disclosures were due by September 28, 2015, Docket No. 10 at 2, but Plaintiff disclosed her experts on October 1, 2015, Docket No. 15-8.  Plaintiff's expert reports failed to comply with several requirements of Rule 26(a)(2)(B), including providing the witnesses' qualifications and a list of other cases in which the witnesses have testified, *see* Docket No. 15-8.  Plaintiff's responses to the interrogatories and requests for production were due on September 14, 2015, Docket No. 15-2, *see also* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), but despite numerous letters and telephone calls from Defendant's counsel, Docket Nos, 15-3, 15-4, 15-5, 15-6, Plaintiff failed to respond to the interrogatories and requests for production until October 26, 2015, nearly two weeks after the pending motion was filed, Docket No. 17-3.[13]  This pattern of discovery violations justifies case-dispositive sanctions. *Sigliano*, 642 F.2d at 310.

### 6.     Conclusion

Plaintiff's counsel repeatedly urges the Court to allow the case to proceed to a trial on the merits. It is the Court's strong preference that cases be resolved on the merits.  When a party fails to comply with her discovery obligations to such an extent that it is impossible for the Court to conduct the trial with any reasonable assurance that the truth would be available, however, a resolution on the merits is not a viable option.  The Court reaches such a conclusion reluctantly and as a last resort, especially in a case such as this one when the plaintiff's counsel is responsible for the discovery violations[14] but it is the plaintiff herself that loses the ability to pursue relief through this litigation.  Nonetheless, it has long been clear that the consequences of an attorney's discovery misconduct may be borne by his client. *See,*

---

[12] Despite her failure to provide these records to Defendant, Plaintiff possessed them and clearly knew of their importance, as evidenced by her providing them to her experts.

[13] Plaintiff's counsel's obstreperous behavior was also manifested in numerous other violations of applicable rules and court orders. *See, e.g.*, Docket Nos. 16, 17 (failure to timely oppose the pending motion or to respond to the resulting order to show cause); Docket No. 21 (failure to comply with Court's redaction requirements); Docket No. 23 (continued failure to comply with Court's redaction requirements and previous order on the same).

[14] Plaintiff's counsel acknowledged that he is to blame for the discovery violations. *See, e.g.*, Hearing Rec. (12/9/2015) at 3:17 p.m.

1  e.g., *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1387 (9th Cir. 1988) (quoting *Link v. Wabash*

2  *Railroad Co.*, 370 U.S. 626, 633-34 (1962)).

3  **III.    CONCLUSION**

4         For the reasons discussed more fully above, the undersigned **RECOMMENDS** dismissal

5  pursuant to Rule 37(d) of the Federal Rules of Civil Procedure.

6         DATED: January 26, 2016

7
                                        _____
8                                        NANCY J. KOPPE
                                         United States Magistrate Judge
9

10                                        **NOTICE**

11        Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in

12  writing and filed with the Clerk of the Court within (14) days after service of this Notice. The Supreme

13  Court has held that the courts of appeal may determine that an appeal has been waived due to the failure

14  to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985), *reh'g denied*, 474

15  U.S. 1111 (1986). The Ninth Circuit has also held that (1) failure to file objections within the specified

16  time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the

17  District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*,

18  951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir.

19  1983).

20

21

22

23

24

25

26

27

28